Coleman, Circuit Judge, dissented and filed opinion.

**Timothy LEARY, Defendant-Appellant,**

**v.**

**UNITED STATES of America, Plaintiff-Appellee.**

**No. 29419.**

United States Court of Appeals, Fifth Circuit.

June 10, 1970.

Michael B. Standard, New York City, George P. Kazen, Laredo, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Timothy Leary appeals from the district court's denial of bail pending his appeal from his conviction for importing marijuana in violation of 21 U.S.C. § 176a. We deny his application to this Court for bail but remand the case to the district court for a hearing on whether Leary has met all the constitutional and statutory requirements for bail pending appeal. Leary's original conviction was reversed by the Supreme Court in Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, rev'g 5 Cir. 1968, 383 F.2d 851, rehearing en banc denied, 392 F.2d 220. The Supreme Court reversed outright the conviction under 26 U.S.C. § 4744(a) (2), but reversed and remanded to this Court the conviction under 21 U.S.C. § 176a. September 1969 this Court remanded the case to the United States District Court for the Southern District of Texas for further proceedings consistent with the opinion of the Supreme Court. In January 1970 the applicant was re-tried and found guilty by a jury on one count of violating 21 U.S.C. § 176a. March 2, 1970, he was sentenced to serve ten years in the federal penitentiary.

At the conclusion of the sentencing proceedings, the applicant requested that he be allowed to be enlarged on bail pending appeal of his case to this Court.[1] The district court denied the request:

> I think under section 3148 of Title 18 I would deny bond during the course of appeal. *I have no doubt that the defendant would appear,* but I have reason to believe that he, if at large, would pose a danger to other persons or to the community. I think his conduct over the past years, particularly since the time that he was tried here before, has been such as to lead me to believe, at least, that he has openly advocated a violation of these laws. He has preached it the length and breadth of the land, and I am inclined to the view that he would pose a danger to the community if released. (Emphasis added.)

Counsel for Leary asked the trial judge if the conclusion that the defendant would be a danger to the community represented findings of fact. The trial judge answered, "No, that is not a finding of fact." Counsel then requested a hearing on the issue of Leary's "danger to persons or community".

---

1. At the time Leary was to be sentenced, he was in the custody of the California authorities where he was awaiting trial for the possession of marijuana, a violation of section 11530 of the California Health and Safety Code. Leary's appearance in the district court was secured through the issuance of a writ of habeas corpus ad prosequendum. After being sentenced he was returned to the custody of the Sheriff of Orange County, California where on March 16, 1970, he was convicted by a jury for violating § 11530 and was sentenced to 10 years in the California penitentiary. He has been denied bail pending appeal by the California trial court, the intermediate appellate court, and the California Supreme Court. Thus, even if this Court were to grant Leary's application he would not immediately be released.

It is my understanding that what you are saying is that because he has advocated, because he has exercised the right of speech, not having performed any other criminal act, that he is to be remanded, and it is that which I think you are suggesting makes him a menace to the community. I would like the record to be clear that I would like a hearing on the question, because I think the burden falls, under 3148, to the United States Attorney, at least in the first instance, to show that he is a menace to the community. And if he does not have that burden, it seems to me that we are entitled to show that far from being a burden on the community, here is someone that enhances the community.

Section 3148 of Title 18, U.S.C. states:

A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence or has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained.

\* \* \*

■ A person, therefore, who has been convicted of an offense and is either awaiting sentence or has filed an appeal is to be released under the same conditions as if he were awaiting trial[2] unless one of four circumstances is present. Release pending appeal may be

---

2.  18 U.S.C. § 3146 provides:

(a) Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:

(1) place the person in the custody of a designated person or organization agreeing to supervise him;

(2) place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;

(4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.

(b) In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

(c) A judicial officer authorizing the release of a person under this section shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that a warrant for his arrest will be issued immediately upon any such violation.

(d) A person for whom conditions of release are imposed and who after twenty-four hours from the time of the re-

denied (1) if it appears that the appeal is frivolous, or (2) if it appears that the appeal is taken for delay, or (3) if the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee, or (4) if the court or judge has reason to believe that the defendant poses a threat to any other person or to the community.

## I.

Leary argues first, that his appeal is not frivolous and not offered merely for delay. He contends that the government failed to prove transportation of the marijuana after importation contrary to law and that § 176a as applied violates his privilege against self-incrimination. The government contends that these arguments are foreclosed by a reasonable interpretation of this Court's decisions in Rule v. United States, 5 Cir. 1966, 362 F.2d 215 and Walden v. United States, 5 Cir. 1969, 417 F.2d 698. Whether *Rule* and *Walden* will be interpreted to foreclose Leary's appeal as the government urges is not the question before us. We must decide only whether Leary's appeal is frivolous.

Rule 46(a) (2) of the Federal Rules of Criminal Procedure originally provided that

Bail may be allowed pending appeal or certiorari only if it appears that the case involves a *substantial question* which should be determined by the appellate court. (emphasis added.)

The Supreme Court amended subdivision (a) (2) in 1956 to provide for bail "unless it appears that the appeal is frivolous or taken for delay".[3] The new

---

lease hearing continues to be detained as a result of his inability to meet the conditions of release, shall, upon application, be entitled to have the conditions reviewed by the judicial officer who imposed them. Unless the conditions of release are amended and the person is thereupon released, the judicial officer shall set forth in writing the reasons for requiring the conditions imposed. A person who is ordered released on a condition which requires that he return to custody after specified hours shall, upon application, be entitled to a review by the judicial officer who imposed the condition. Unless the requirement is removed and the person is thereupon released on another condition, the judicial officer shall set forth in writing the reasons for continuing the requirement. In the event that the judicial officer who imposed conditions of release is not available, any other judicial officer in the district may review such conditions.

(e) A judicial officer ordering the release of a person on any condition specified in this section may at any time amend his order to impose additional or different conditions of release: *Provided,* That, if the imposition of such additional or different conditions results in the detention of the person as a result of his inability to meet such conditions or in the release of the person on a condition requiring him to return to custody after specified hours, the provi-

sions of subsection (d) shall apply.

(f) Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law.

(g) Nothing contained in this section shall be construed to prevent the disposition of any case or class of cases by forfeiture of collateral security where such disposition is authorized by the court.

3. Mr. Justice Frankfurter has described the liberalization of the rule governing bail pending appeal as follows:

[T]he new Rule effectuates a shift from putting the burden on the convicted defendant to establish eligibility for bail, to requiring the Government to persuade the trial judge that the minimum standards for allowing bail have not been met.

The Rule expresses a general attitude, the significance of which is that inasmuch as an appeal from a conviction is a matter of right, the risk of incarceration for a conviction that may be upset is normally to be guarded against by allowing bail unless the appeal is so baseless as to deserve to be condemned as "frivolous" or is sought as a device for mere delay. Ward v. United States, 76 S.Ct. 1063, 1065, 1 L.Ed.2d 25, 27 (1956) (opinion in chambers).

standard was intended to liberalize the granting of bail pending appeal, and it is this lighter standard that was taken without change into the Bail Reform Act of 1966, 18 U.S.C. §§ 3141–3152. See C. Wright, Federal Practice and Procedure § 767 (1969).

Under the standards of the pre-1956 Rule, a question that was fairly debatable was considered "substantial". D'Aquino v. United States, 9 Cir., 1950, 180 F.2d 271 (Opinion of Circuit Justice Douglas). A fortiori, such a question cannot now be considered frivolous.

We hold that the constitutional argument is not so insubstantial that the appeal should be held to be frivolous and foreclosed by *Rule* and *Walden*.

## II.

▆ We turn next to the issue of whether Leary represents a danger to other persons and to the community within the meaning of 18 U.S.C. § 3148. The burden is upon the government to demonstrate that the applicant does represent such a threat. Ward v. United States, 1956, 76 S.Ct. 1063, 1 L.Ed.2d 25.

In opposing Leary's application, the government has advanced a number of reasons why it believes that Leary presents a danger to the community. (1) The applicant's history and writings demonstrate that he has persistently advocated the use of narcotic drugs in violation of the laws of the United States and of the several states and in this respect he goes substantially beyond the mere abstract on advocacy of ideas and conduct which is privileged under the first amendment. (2) The applicant has openly and continuously violated the narcotics laws and has organized and at-

tended meetings in which large numbers of persons take drugs. (3) The applicant was associated with a ranch in Riverside County, California, where two persons allegedly died as a result of the ingestion of drugs. (4) The applicant was convicted March 16 of violating § 11530 of the California Health and Safety Code (possession of marijuana). (5) The applicant is reputedly one of twelve partners of the Brotherhood of Eternal Love, an organization thought to be engaged in the supply of narcotics allegedly obtained from the Mafia.

The district court, in deciding that Leary did represent a threat to the community, relied solely on the ground that he had "openly advocated" the use of drugs in violation of the law.

▆ The district court's holding raises a serious constitutional question. If the "danger" referred to in § 3148 includes mere "advocacy" of the use of illegal drugs or of other law violations, the section offends the constitutional guaranty of freedom of speech. See, for example, the recent decision, Brandenburg v. Ohio, 1969, 395 U.S. 444, 89 S. Ct. 1827, 23 L.Ed.2d 430. And if the appellant's eligibility to be enlarged on bail under the Eighth Amendment may be lost because he exercises his first amendment right to freedom of speech and to freedom of the press, then Section 3146 imposes an unconstitutional condition. To avoid holding the statute unconstitutional, one must construe the term "danger" as conduct, not advocacy falling short of actual incitement to imminent unlawful conduct.

In Williamson v. United States, 2 Cir. 1950, 184 F.2d 280, Mr. Justice Jackson, sitting as Circuit Justice for the Second

This approach was reflected in a series of decisions by individual Justices designed to insure that bail pending appeal would be fairly considered so that even the most unsavory defendants would not be incarcerated before their convictions were ultimately upheld or be denied bail as a form of punishment. See, e.g., Ellis v. United States, 79 S.Ct. 428, 3 L.Ed.2d 565 (1959) (Chief Justice Warren); Reynolds v. United States, 80 S.Ct. 30,

4 L.Ed.2d 46 (1959) (Justice Douglas); Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (Justice Douglas) (1969); Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962) (Justice Douglas) rev. denied, 369 U.S. 868, 82 S.Ct. 1137, 8 L.Ed.2d 274; Cohen v. United States, 82 S.Ct. 8, 7 L.Ed.2d 13 (1961) (Justice Douglas); Leigh v. United States, 82 S. Ct. 994, 8 L.Ed.2d 269 (1962) (Chief Justice Warren).

Circuit, was confronted with a similar problem when Communist Party leaders were convicted for conspiring to advocate the violent overthrow of the United States Government and to organize the Communist Party for that purpose in violation of 18 U.S.C. § 2385. After the defendant's convictions had been affirmed by the Court of Appeals, the government asked that bail be revoked. One of the grounds for the requested revocation was that the defendants, while at large, pursued and would continue to pursue a course of conduct and activity dangerous to the public welfare, safety, and national security of the United States. Mr. Justice Jackson pointed out:

> If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary judicial technique to supplement conviction of such offenses as those of which defendants stand convicted.

184 F.2d at 282–283. The past activities that the government contended were dangerous consisted entirely of making speeches and writing articles or editorials chiefly for the Communist Party organ the Daily Worker. These articles however, did not advocate the violent overthrow of the government, a crime under 18 U.S.C. § 2385. Rather, the articles were characterized by Mr. Justice Jackson as "inciting, as all opposition speaking or writing that undermines confidence and increases discontent may

be said to be incitement." 184 F.2d at 283. The utterances *themselves* were not criminal, but protected by the Bill of Rights. Since the government could not reach them directly, Mr. Justice Jackson concluded that the courts could not reach out and stop them indirectly by denying bail.

> [C]ourts should not utilize their discretionary powers to coerce men to forego conduct as to which the Bill of Rights leaves them free. Indirect punishment of free press or free speech is as evil as direct punishment of it. Judge Cardozo wisely warned of "the tendency of a principle to. expand itself to the limit of its logic." [Cardozo, Nature of the Judicial Process 51]. If the courts embark upon the practice of granting or withholding discretionary privileges or procedural advantages because of expressions or attitudes of a political nature, it is not difficult to see that within the limits of its logic the precedent could be carried to extremeties to suppress or disadvantage political opposition * * *.

184 F.2d at 283.

The government does not contend that Leary's utterances in themselves are criminal. Rather, the government is concerned primarily with the impact of Leary's advocacy on large numbers of persons, specifically juveniles. It was solely for this reason that the district court denied Leary's application. We do not underestimate the effect the applicant may already have had on today's youth. But Leary held in jail, pending appeal, without bail, on grounds previously held to be constitutionally unacceptable, poses a more serious threat to the integrity of our system of laws than does a Leary enlarged on bail in accordance with established rules of law and the decisions and practices of the courts —*after a hearing on the issue.*[4]

---

4. *Cf.* Bridges v. United States, 9 Cir. 1950, 184 F.2d 881 in which the Government sought to have Bridges' bail revoked on the ground that his activities would contribute to sabotaging the American war

effort in Korea. The Court rejected this contention: "The whole matter appears finally to boil down to the contention that Bridges is a proven Communist in that he was found guilty of perjury for swearing

The record, as is not surprising, does not show supporting evidence for the contentions the Government advances for opposing Leary's release on bail. Their truth and their probable effect in terms of the applicant's danger to the community can be determined only after a proper hearing. If any of the Government's allegations are *true* and if they go beyond mere advocacy, extenuating circumstances or the imposition of appropriate conditions may justify the applicant's release on reasonable bail. In any event, in this case the Bill of Rights compels an evidentiary hearing.

We take note that the Government has informed this Court that if we should conclude that the denial of bail is not sufficiently supported by the record, the Government requests that the applicant not be released without a hearing at which it will "present evidence showing that the appellant, if left at large, will be a menace to the community". Carbo v. United States, 1962, 82 S.Ct. 662, 7 L.Ed.2d 769, and United States v. Erwing, N.D.Cal.1968, 280 F.Supp. 814 clearly demonstrate the value to be derived by a hearing on the merits of an application for bail pending appeal. Nothing we say in this opinion, however, should be construed as expressing the view that Leary should or should not be released on bail.

On remand, the government will bear the burden of substantiating the reasons why it believes that by allowing Leary to be enlarged on bail he will be a "danger" to the community within the meaning of § 3148. See Ward v. United States, 1956, 76 S.Ct. 1063, 1 L.Ed.2d 25; Rhodes v. United States, 4 Cir. 1960, 275 F.2d 78.

One further observation and we conclude our discussion. The presentence report submitted by the Office of the Probation Officer contains information relating to charges which have been filed against Leary in other jurisdictions. The disposition of these charges is not clear from the report. We are of the opinion that a proper disposition of this application requires that this information be made available to the district court.

It is therefore ordered:

1) The application of Timothy Leary for bail pending appeal is denied.

2) The case is remanded to the district court for an expeditious hearing on the merits of the application for bail pending appeal.

3) If the district court, after holding the hearing as ordered, should refuse release pending appeal, or impose conditions of release, the court should state in writing the reasons for the action taken. F.R.A.P. 9(b).

4) The motion filed by the American Civil Liberties Union for leave to file a brief as amicus curiae is denied without prejudice to its right to renew its request in the district court.

Accordingly, this case is remanded for further proceedings consistent with this opinion.

---

the contrary in his naturalization proceeding; and that the subsequent development of the Korean crisis renders him per se a menace to the public security, hence the district court was right in revoking his bail and ordering him confined. * * * It seems to be believed that in this instance the end justifies the means. Perhaps we may be pardoned for doubting whether, even as a practical matter, the end sought will be furthered by the means here employed at the behest of the Department of Justice. A Bridges singled out and jailed by arbitrary judicial action while he is prosecuting with diligence his good faith appeal poses, to our minds, a more serious menace to the nation and its institutions than does a Bridges enlarged on bail in accordance with established rules of law and the decisions and practice of the courts. In the eyes of large numbers of well-meaning and loyal people without as well as within the ranks of organized labor, even including many of Bridges' fellow unionists who have heartily disagreed with his policies, he will appear a victim of judicial tyranny; and authentic material for propaganda is supplied for the use of the vociferous critics and implacable foes of our democratic way of life." 184 F.2d at 886–887.

COLEMAN, Circuit Judge, dissenting.

Pursuant to the outstanding, unreversed prior decisions of this Circuit and other Circuits, I am of the opinion that Leary's appeal is, in fact, frivolous. I, therefore, would affirm the denial of bail by the District Court without reaching or considering the First Amendment question which Leary seeks to inject into a straight out conviction for violating the narcotics laws.

I, therefore, respectfully dissent from the remand for a hearing.